**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

GREATAMERICA LEASING
CORPORATION,

              Plaintiff,

vs.

DAVIS-LYNCH, INC.,

              Defendant.

No. 10-CV-13-LRR

**ORDER**

---

### *TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*II.*    *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*III.*   *SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . **2**

*IV.*   *FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

     *A.*  *Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
     *B.*  *Agreements* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
     *C.*  *Nancy Moreno* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
     *D.*  *Instant Action* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
     *E.*  *Texas Action* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

*V.*     *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

     *A.*   *Legal Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
     *B.*   *Transfer of Venue Analysis* . . . . . . . . . . . . . . . . . . . . . . . **7**
          *1.*   *Convenience of the parties* . . . . . . . . . . . . . . . . **7**
          *2.*   *Convenience of the witnesses* . . . . . . . . . . . . . **13**
          *3.*   *Interest of justice* . . . . . . . . . . . . . . . . . . . . . . **14**
          *4.*   *Forum selection clauses* . . . . . . . . . . . . . . . . . **19**
     *C.*   *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**

*VI.*   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

## I.  INTRODUCTION

The matter before the court is Defendant Davis-Lynch, Inc.'s "Motion to Change Venue to the Southern District of Texas" ("Motion") (docket no. 14).

## II.  PROCEDURAL BACKGROUND

On August 26, 2009, Plaintiff GreatAmerica Leasing Corporation filed a Petition at Law ("Complaint") (docket no. 3) against Defendant in the Iowa District Court for Linn County, case no. LACV066574. Plaintiff asserts claims for breach of contract and unjust enrichment. On January 29, 2010, Defendant removed the action to this court pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction. On February 9, 2010, Defendant filed an Answer (docket no. 9) in which it denied the substance of the Complaint and asserted various affirmative defenses.

On May 19, 2010, Defendant filed the Motion. On June 17, 2010, Plaintiff filed a Resistance (docket no. 17). On June 24, 2010, Defendant filed a Reply (docket no. 18). Neither side requests oral argument on the Motion. The Motion is fully submitted and ready for decision.

## III.  SUBJECT MATTER JURISDICTION

The court has diversity jurisdiction over this case because complete diversity exists among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States"). The court is satisfied that subject matter jurisdiction exists.

## IV.  FACTUAL BACKGROUND

### A.  Parties

Plaintiff is an Iowa corporation with its principal place of business in Cedar Rapids, Iowa. Plaintiff provides financing to "qualified customers of equipment vendors wishing

to lease business equipment." Affidavit of Heather Wood ("Wood Aff.") (docket no. 17-1), at ¶ 5.

Defendant is a Texas corporation with its principal place of business in Pearland, Texas.

### B. Agreements

In March of 1998, Plaintiff began to provide financing for Defendant's office equipment. Sometime in 2006, Defendant chose Seamless Solutions ("Seamless") as its equipment vendor. As part of this arrangement, Defendant and Seamless entered into "multiple agreements for copy machines[.]"[1] Affidavit of Bill Kelley ("Kelley Aff.") (docket no. 14-1), at ¶ 2. These transactions were characterized as "C/CAMP Customer/Client Asset Management Program" agreements ("C/CAMP Agreements"). Wood Aff. at ¶ 12. According to Plaintiff, "[f]rom 2006-2007, Seamless presented 13 different requests for financing from [Defendant] to [Plaintiff]." *Id.* Plaintiff approved all thirteen requests and "took immediate assignment of each of the contracts and provided the financing for [Defendant]." *Id.* at ¶ 15.

On June 20, 2008, Defendant and Seamless consolidated a number of the C/CAMP Agreements into two agreements identified as Agreement No. 474412 and Agreement No.

---

[1] The exact nature of the transaction as it relates to copy machines is unclear. Plaintiff characterizes it as a straightforward third-party financed lease arrangement. That is, Plaintiff provided financing to Defendant to allow it to lease office equipment, including copy machines, from a vendor (Seamless). Defendant appears to dispute that it actually leased any copy machines. Rather, Defendant submits that it agreed "to purchase photocopies produced by on-site photocopy equipment." Defendant's Brief (docket no. 14-2), at 1. Defendant asserts that Seamless "represented the [transaction] as an agreement to pay for photocopies only at specific rates" and "specifically stated the agreement was not a purchase agreement, lease agreement or rental agreement." *Id.* at 1-2. Defendant further contends that "the agreement was completely flexible, not tied to any specific equipment and could be adjusted up or down on a monthly basis to reflect the needs of the customer." *Id.* at 2. In fact, Defendant submits that it "accepted the . . . offer in part because no equipment would be leased." *Id.*

459715 (together, "the Agreements"). Seamless assigned its rights under the Agreements to Plaintiff. The Agreements provide, in relevant part:

> 15. CONSENT TO LAW, JURISDICTION, AND VENUE: This Agreement shall be deemed fully executed and performed in the state of Owner or its Assignee's principal place of business and shall be governed by and construed in accordance with its laws. If the Owner or its Assignee shall bring any judicial proceeding in relation to any matter arising under the Agreement, the Customer irrevocably agrees that any such matter may be adjudged or determined in any court or courts in the state of the Owner or its Assignee's principal place of business, or in any court or courts in Customer's state of residence, or in any other court having jurisdiction over the Customer or assets of the Customer, all at the sole selection of the Owner. The Customer hereby irrevocably submits generally and unconditionally to the jurisdiction of any such court so elected by Owner in relation to such matters.

Wood Aff. Exhibits 9 & 10 (docket no. 17-1), at 22, 24.

### C. Nancy Moreno

At the time the Agreements were executed, Defendant employed a woman named Nancy Moreno a/k/a Nancy Saldana ("Moreno").[2] According to Defendant's Vice President, Bill Kelley, the Agreements "apparently entered into by [Defendant and] Seamless Solutions were negotiated and purportedly signed on behalf of [Defendant] by Moreno as controller even though she was not an employee of [Defendant], [was] never authorized to execute these contracts on behalf of [Defendant] and did not ever occupy the position of controller." Kelley Aff. at ¶ 9.

---

[2] It appears that Defendant did not directly employ Moreno. According to Defendant, at the time the Agreements were executed, Moreno "was an employee of Asgard, Inc., a staffing company," and was "on assignment" with Defendant. Kelley Aff. at ¶ 8.

### D. Instant Action

According to Plaintiff, Defendant made regular monthly payments under Agreement No. 474412 from September 2008 to April 2009 and made regular monthly payments under Agreement No. 459715 from August 2008 to April 2009. Plaintiff alleges that Defendant then ceased making payments and therefore breached the Agreements.

### E. Texas Action

On January 8, 2010—more than four months after Plaintiff filed the instant action—Defendant filed a complaint against Moreno, and more than a dozen related individuals and entities, in the United States District Court for the Southern District of Texas, case no. 10-CV-87 ("Texas Action"). Defendant later amended its complaint to add Seamless as a defendant. Plaintiff is not a party to the Texas Action.

In the Texas Action, Defendant alleges that Moreno worked in Defendant's accounting department and was "in charge of handling account[s] payable and accounts receivable." Texas Action Amended Complaint (Defendant's Exhibit A (docket no. 14-3, at 8-35), at ¶ 32. Defendant alleges that several of Moreno's relatives, including her daughter, also worked for Defendant and were under Moreno's supervision. Defendant alleges that, in the "late spring of 2009," it attempted to "restructur[e] its costs associated with an agreement to purchase copies associated with numerous copying machines for its business provided by Seamless[.]" *Id.* During this restructuring, Defendant alleges that it discovered it was paying for copies associated with a copy machine that could not be accounted for. Defendant alleges that it ultimately discovered the copier had been delivered to "Saldana Custom Homes, Inc. and/or A&E Transportation." Kelley Aff. ¶ 6. Moreno's son, Kent Saldana, allegedly owns both entities.

Defendant subsequently launched an investigation into the accounts payable Moreno managed for Defendant. At the time of the investigation, Moreno remained as a "contract employee assigned to [Defendant]" but her relatives no longer worked there. Texas Action

Amended Complaint at ¶ 32. Defendant subsequently terminated Moreno's employment and hired "forensic accounting examiners" to review its records. *Id.* Defendant alleges that the investigation revealed "various schemes" by which Moreno and the other Defendants in the Texas Action sought to "embezzle millions of dollars and fraudulently transfer millions of dollars from the accounts of [Defendant] to fictitious businesses owned by [Moreno and her relatives]." *Id.* All told, Defendant alleges that Moreno and her accomplices stole more than $15 million from Defendant.

Of particular relevance to the instant action, Defendant alleges that Seamless had a hand in the alleged copier fraud. Specifically, Defendant alleges that Seamless conspired with Moreno to provide a copier to Kent Saldana's business while billing the copying costs to Defendant. Defendant also alleges that Seamless made "side payments" to Moreno in exchange for her help in "increasing [Seamless's] charges to [Defendant]" and "entered into secret discussions" with Moreno "to conceal the improper charging" associated with Moreno's son. *Id.* at ¶ 33. Among numerous other claims raised in the Texas Action, Defendant asserts claims for fraud and civil conspiracy against Seamless.

## *V. ANALYSIS*

Defendant asks the court to transfer the instant action to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a). Defendant contends that the instant action arises from a "fraudulent agreement" between itself and Seamless. Motion at ¶ 1. Defendant argues that the instant action should be transferred because "Defendant, the evidence, the witnesses, and Seamless Solutions reside in the Southern District of Texas, and the fraud took place in the Southern District of Texas." *Id.* at ¶ 2. Defendant states that, if the court transfers the instant action, it will seek to consolidate it with the Texas Action.

### *A. Legal Background*

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have

been brought."³  28 U.S.C. § 1404(a).  "The statutory language reveals three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).

However, a court's evaluation of a transfer motion is not limited to these enumerated factors. *Id.* "[S]uch determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.* Generally, "federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under [§] 1404(a) typically bears the burden of proving that a transfer is warranted. *Id.* at 695.  District courts possess "much discretion" in deciding whether to transfer a case. *Id.* at 697.

### B.  Transfer of Venue Analysis

#### 1.    Convenience of the parties

Defendant asserts that this factor weighs in favor of a transfer of venue.  Plaintiff contends that a transfer of venue to the Southern District of Texas would merely exchange Defendant's inconvenience for that of Plaintiff.  Plaintiff also submits that the presence of the forum selection clause requires Defendant to make a much higher showing of inconvenience to warrant transfer.⁴

---

³ The parties do not dispute that the Southern District of Texas is a district where the instant action "might have been brought." 28 U.S.C. § 1404(a).  The court also notes that the Agreements' forum selection clause allows for suit to be brought in "any court or courts in [Defendants'] state of residence." Wood Aff. Ex. 9 & 10.  Accordingly, the Southern District of Texas is a district in which the instant action could have been brought.

⁴ Plaintiff cites *M/S Bremen v. Zapata Off-Shore Co.*, where, in addressing the validity of a forum selection clause, the Supreme Court noted:

> Whatever 'inconvenience [the defendant] would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting.  In such

7

Rather than specifically addressing its own inconvenience in litigating the instant action in Iowa, Defendant argues that the Southern District of Texas would be a more convenient venue for the following reasons: (1) the original parties to the Agreements—Defendant and Seamless—are located in the Southern District of Texas; (2) the Agreements were "purportedly negotiated, signed, and performed in Texas"; (3) the subject of the Agreements (i.e., the copy machines) were used in Defendant's Texas office; and (4) a "substantial majority of the relevant records in this case are housed in Texas." Def. Brief at 5-6.

The court finds that the convenience of the parties does not weigh in favor of transfer. The court initially notes that, although Defendant and Seamless are Texas residents, the instant action has a stronger Iowa connection than Defendant is willing to admit. Plaintiff's financing relationship with Defendant began in 1998. At that time, Plaintiff's employees in Iowa "reviewed [Defendant's] credit profile and approved a lease transaction for office equipment." Wood Aff. at ¶ 7. From 2006 to 2007, Seamless provided thirteen financing requests from Defendant to Plaintiff. Plaintiff's employees "reviewed each individual request for financing at [Plaintiff's] headquarters in Cedar Rapids." *Id.* at ¶ 15. Plaintiff's Senior Documentation Analyst, Heather Wood, avers that, prior to accepting the Agreements, she called Defendant's office manager, who informed her that "all the equipment on both Agreements was installed and working properly." *Id.* at ¶ 18. Plaintiff then accepted the Agreements, and they were "signed by

circumstances it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain.

407 U.S. 1, 17-18 (1972).

[Plaintiff's] employee Aimee Johnson in Cedar Rapids, Iowa." *Id.* at ¶ 19.

Defendant claims that a "substantial majority of the relevant records in this case are housed in Texas." Def. Brief at 6. This argument fails for several reasons. First, "[w]ith the advent of photocopying and other technological advances, the location of the documentary evidence is given little weight in the transfer analysis." *Wells Fargo Fin. Leasing, Inc. v. Orlando Magic Ltd.*, 431 F. Supp. 2d 955, 967 (S.D. Iowa 2006) (Gritzner, J.) Second, it appears undisputed that "[a]ll of the original documentation for the multiple transactions at issue in this case"—including the two Agreements at issue and the underlying C/CAMP Agreements—are "located at [Plaintiff's] headquarters in Cedar Rapids." Wood Aff. at ¶ 26. Plaintiff also "maintains the documents with regard to the payment history of these transactions." *Id.* Presumably, the documents most relevant to Plaintiff's claims that Defendant breached the Agreements by failing to pay would be the Agreements and payment records, both of which are in Iowa. Third, Defendant fails to identify with any specificity what records are located in Texas, much less what relevance they have to the instant action. A "general allegation" that transfer is necessary because of the location of books and records is insufficient. 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3853, p. 245 (3d ed. 2007). The moving party "must establish the location of the documents in question, their importance to the resolution of the case, and their inability to be moved or effectively copied easily." *Id.* Defendant has not done so.

The court also disagrees with Defendant's claim that the Agreements were "negotiated, signed, and performed in Texas." Def. Brief at 5. Defendant wholly ignores the language of the Agreements, which provides that they "shall be deemed *fully executed and performed* in the state of Owner or its Assignee's principal place of business[.]" Wood Aff. Ex. 9 & 10 (docket no. 17-1), at 22, 24 (emphasis added). Because Plaintiff is the assignee of the Agreements, this language plainly provides that the Agreements are

deemed executed and performed in Iowa. Further, it is undisputed that one of Plaintiff's employees executed the Agreements at Plaintiff's Cedar Rapids headquarters. It is also clear that Plaintiff reviewed and approved the financing requests in Iowa. While Defendant's contact with Seamless apparently occurred in Texas, nothing suggests that the relevant transactions involving Plaintiff are more connected to Texas than to Iowa.

The court finds that the presence of the copy machines in Texas also does not support a transfer of venue. Defendant does not explain what particular relevance the copy machines have to the instant action or why their presence in Texas would make the Southern District of Texas a more convenient forum. *See Wells Fargo*, 431 F. Supp. 2d at 967 (discounting location of certain equipment in transfer analysis, in part because "any examination of the equipment, if necessary, would most likely be done by an expert and introduced via his or her testimony"). From the context of Plaintiff's allegations and Defendant's Answer, it is unclear why the presence of the copy machines would make the litigation of the instant action any more or less convenient in either forum.

Plaintiff argues that "[t]he facts of this case, and the factors favoring transfer, appear nearly identical" to those in *GreatAmerica v. Telular Corp.*, No. C-98-127, 1999 WL 33656867 (N.D. Iowa April 20, 1999) (Melloy, C.J.). Def. Brief at 5. Like the instant action, *Telular* grew out of a dispute over leased copy machines. Telular leased copy machines from U.S. Office, who then assigned the leases to GreatAmerica. *Telular Corp.*, 1999 WL 33656867, at *1. Telular later discovered that the amount it was paying to lease the copy machines appeared "unreasonably high." *Id.* at *2. When it requested an explanation, a U.S. Office employee investigated the matter and reported back to Telular that he was "not comfortable with the lack of paperwork found in Telular's file." *Id.* U.S. Office later advised Telular that several documents relating to the leases were missing from its files. *Id.* Representatives of Telular and U.S. Office met several times in the Chicago area, but were unable to resolve the dispute. *Id.* Telular believed U.S.

Office over-billed it by nearly $100,000 and noted "several irregularities" in its billing statements.[5] *Id.* GreatAmerica advised Telular that they could "not respond" to Telular's concerns because "they had no information on the leases, the underlying transactions, or the source of the dispute concerning the amounts alleged[ly] owing under the leases." *Id.* After Telular ceased its payment on the leases, GreatAmerica brought a breach of contract action in Iowa state court. *Id.* at *3. Telular removed the action to this court and moved to transfer the case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a).

The court held that a transfer of venue to the Northern District of Illinois was warranted. *Id.* at *7. Significantly, the court found that "the substantial majority of events giving rise to Telular's claims occurred in the Northern District of Illinois." *Id.* at *4. The original parties to the agreements, Telular and U.S. Office, were located in the Northern District of Illinois and "[a]ll of the prospective material witnesses [were] located in Illinois," including the involved representatives of both Telular and U.S. Office. *Id.* The court noted that GreatAmerica "failed to name any relevant witnesses that reside in Iowa." *Id.* Additionally, the court noted that the lease agreements were "negotiated, signed, and performed in Illinois[,]" the copy machines "were used in Telular's Illinois offices" and Telular "attempted to remedy the problem in Illinois with U.S. Office officials." *Id.* at *5. The court also noted that "a substantial majority of the relevant records in [the] case [were] housed in Illinois" and therefore the discovery of documentary evidence would prove "significantly more convenient in Illinois." *Id.* In sum, the court found that the only connection the case had with Iowa was that GreatAmerica's offices were there. *Id.* The *Telular* court also held that the presence of a permissive forum selection clause did not preclude the transfer. *Id.* at *6. The court held that "the convenience of the parties and the witnesses, and the interests of justice strongly weigh[ed]

---

[5] In fact, Telular's president and CEO stated that he was unaware that U.S. Office had even assigned the leases to GreatAmerica until GreatAmerica sued Telular.

in favor of transfer" and that "[t]he forum selection clause is only one factor that weighs against transfer." *Id.* at *7.

The court finds that the instant action is distinguishable from *Telular*. In *Telular*, the plaintiff "failed to name any relevant witnesses that reside in Iowa." *Id.* at *4. As explained below, Plaintiff has identified numerous Iowa witnesses that were personally involved with the transactions at issue. In stark contrast with *Telular*, it is Defendant that has largely failed to identify the relevant Texas witnesses, the nature of their testimony or what inconvenience they would suffer if the court does not transfer the instant action. Further, Plaintiff's employees executed the Agreements on its behalf in Iowa, which did not appear to be the case in *Telular*. In *Telular*, "GreatAmerica advised Telular that . . . [it] had no information on the leases, the underlying transactions, or the source of the dispute concerning the amounts alleged[ly] owing under the leases." *Id.* at *2. Here, Plaintiff appears to have knowledge relevant to most, if not all, of these issues. The court also noted in *Telular* that the leasing agreements were "performed in Illinois." *Id.* at *5. Here, the Agreements expressly provide that they are deemed executed and performed in Iowa. Other factors relied upon by the court in *Telular*, such as the presence of the equipment and records in Illinois, do not weigh in favor of transfer for the reasons discussed herein.

Defendant puts forth no convincing argument as to why its inconvenience in litigating the instant action in Iowa would be any more severe than Plaintiff's inconvenience in litigating in Texas.[6] It is well established that "'[m]erely shifting the

---

[6] Defendant does not explicitly argue that it would be inconvenienced by litigating the instant action in Iowa. However, to the extent Defendant impliedly makes such an argument, the court notes that its execution of a valid forum selection clause may constitute a waiver of its right to assert its own inconvenience as a reason to transfer the case. *See Heller Fin., Inc. v. Midwhey Powder Co.,* Inc., 883 F.2d 1286, 1293 (7th Cir. 1989) ("[A] valid forum-selection clause may waive a party's right to assert his own inconvenience as a reason to transfer a case, but district courts still must consider whether

inconvenience from one side to the other . . . is not a permissible justification for a change of venue.'" *Terra Int'l*, 119 F.3d at 696-97 (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)). Accordingly, the court finds that this factor does not support a transfer of venue.

### 2. *Convenience of the witnesses*

Defendant argues that this factor weighs in favor of transfer because "[a]ll of the prospective material witnesses" are located in Texas, including "all employees of [Defendant] and Seamless Solutions as well as [Moreno] and her son Kent Saldana." Def. Brief at 5. Plaintiff counters that Defendant failed to sufficiently identify the potential witnesses that would be inconvenienced or even "allege inconvenience on the part of anyone." Resistance at 7. Plaintiff also contends that, contrary to Defendant's claims, many witnesses are located in Iowa.

Despite Defendant's assertion that "all of the prospective material witnesses . . . are located in Texas," the only witnesses it specifically identifies are Moreno and Kent Saldana. Def. Brief at 5. Defendant does not specify how these witnesses would be inconvenienced if the instant action remains in the Northern District of Iowa. Kelley's affidavit does not identify any witnesses, much less explain how they would be inconvenienced if the instant action is litigated in Iowa. *See Reid-Walen v. Hansen*, 933 F.2d 1390, 1396 (8th Cir. 1991) (noting that, in *forum non conveniens* context, "[t]he burden is on the defendant to provide [facts regarding the materiality and importance of the anticipated witnesses' testimony] by way of affidavit or other information"); *Medicap*

---

the interests of justice or the convenience of witnesses require transferring a case.") (citation and internal quotation marks omitted); *Medicap Pharmacies, Inc. v. Faidley*, 416 F. Supp. 2d 678, 687 (S.D. Iowa 2006) (Pratt, J.) ("While Defendants imply that litigating the present matter in Iowa would pose a substantial financial burden on them, they essentially waived the right to argue inconvenience when they agreed to the franchise agreement and the forum selection clause.").

*Pharmacies*, 416 F. Supp. 2d at 687 ("The party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover.") (citation and internal quotation marks omitted).

Plaintiff contends that at least eighteen witnesses, all employees of Plaintiff, are located in Iowa.[7] Plaintiff also provides the names of all Iowa witnesses and a general description of their involvement with the relevant transactions. *See* Wood Aff. at ¶¶ 22-25. Plaintiff asserts that these employees have knowledge regarding Plaintiff's decision to extend credit to Defendant, the documentation and booking of the transactions, the delivery and installation of the equipment, Defendant's relationship with Seamless and Plaintiff's communications with Defendant after it allegedly defaulted on the Agreements. The court also notes that, in responding to Plaintiff's interrogatories, Defendant itself identified two of Plaintiff's employees as persons "who have knowledge or information relating to the facts and circumstances alleged in [Defendant's] Answer and of the subject matter of this lawsuit[.]" Plaintiff's Exhibit C (docket no. 17-3), at 1. In light of Defendant's failure to sufficiently identify its potential witnesses or the general nature of their testimony, coupled with Plaintiff's specific identification of numerous witnesses that appear directly involved with the relevant transactions, the court finds that the convenience of the witnesses does not support a transfer of venue.

### 3.    *Interest of justice*

Courts weigh a wide variety of considerations under the "interest of justice" factor,

---

[7] The court notes that, because they are within a party's control, the convenience of a party's employees is sometimes afforded less weight. *See Farm Boy Co-Op & Feed Co., LLC v. Red River Clothing, Inc.*, No. 09-2936 ADM/JSM, 2010 WL 935747, at *3 (D. Minn. Mar. 12, 2010) (noting that, because employees of a party will presumably appear voluntarily in a foreign forum, "it is the inconvenience to non-party witnesses that is especially relevant"). However, in the instant action, this factor cuts both ways. Although most, if not all, of Plaintiff's witnesses are its employees, it is equally clear that many of Defendant's prospective witnesses would be its own employees.

including:

> (1) judicial economy, (2) the plaintiff's choice of forum, (3)
> the comparative costs to the parties of litigating in each forum,
> (4) each party's ability to enforce a judgment, (5) obstacles to
> a fair trial, (6) conflict of law issues, and (7) the advantages of
> having a local court determine questions of local law.

*Terra Int'l*, 119 F.3d at 696 (listing factors with approval and noting that they "parallel the factors that courts typically analyze under section 1404(a)").

Initially, the court notes that Plaintiff's choice of forum is generally entitled to "considerable deference" in the transfer analysis. *Id.* at 695. However, courts give that choice "significantly less deference when (1) plaintiff does not reside in the selected forum, or (2) the transaction or underlying facts did not occur in the chosen forum." *Nelson v. Soo Line R.R. Co.*, 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999) (internal citations omitted). Here, Plaintiff is a resident of its chosen forum. However, some of the underlying transactions and facts clearly occurred in Texas, including the transactions between Defendant and Seamless, which were subsequently assigned to Plaintiff, as well as the alleged fraud and embezzlement by Moreno and others. The problem for Defendant, however, is that it appears that all of the relevant facts and transactions from Plaintiff's end occurred in Iowa. It is undisputed that Plaintiff's employees reviewed the transactions and executed all documents relevant to the Agreements in Iowa. The fact that, prior to Plaintiff becoming involved, Defendant entered into various negotiations or transactions with Seamless in Texas does not entirely negate the deference afforded to Plaintiff's choice of forum. Accordingly, the court finds that Plaintiff's choice of forum is entitled to some deference and that this consideration weighs against transfer.

The parties do not argue, and the record does not reflect, that the relative costs to either party of litigating in either forum would be substantially different. Nor do the parties contend that they will be unable to obtain a fair trial in either Iowa or Texas. There also does not appear to be any conflict of law issues that would make either forum more

15

appropriate. Accordingly, the court finds these factors neutral in the transfer analysis.

The Agreements provide that they shall be "governed by and construed in accordance with" the laws of the state where the assignee maintains its principal place of business. Accordingly, Iowa law governs the parties' contractual dispute. Therefore, the current forum would provide the potential benefit of "having a local court determine questions of local law." *Terra Int'l*, 119 F.3d at 696. The court finds that this factor weighs against transfer. However, it is not entitled to significant weight due to the relatively basic nature of Plaintiff's claims.

Defendant contends that considerations of judicial economy and the parties' ability to enforce a judgment strongly support transfer. Defendant asserts that, unless the instant action is transferred, "this [c]ourt and a second federal district court will be concurrently considering and resolving the same set of factual issues—namely whether the agreements entered by Seamless and [Defendant] were a result of fraud." Def. Brief. at 7. Defendant submits that this could result in "conflicting judgments regarding the same evidentiary issues and questions of law." *Id.*

Plaintiff offers several responses. First, in light of the forum selection clause and the parties' lengthy financing relationship, Plaintiff argues that "it should come as no surprise that if a dispute arose with regard to the Agreements, [Plaintiff] . . . would insist that the litigation occur in Iowa[.]" Resistance at 9. Second, Plaintiff argues that it is not a party to the Texas Action and the Texas Action otherwise "does not involve" Plaintiff. *Id.* Finally, Plaintiff contends that the instant action is a "simple and straight forward breach of contract case involving two finance contracts" and that Defendant's claims in the Texas Action have no bearing on Plaintiff's ability to recover on its claims here.[8] *Id.* at

---

[8] The Agreements provide: "You agree that the rights of [the assignee] will not be subject to any claims, defenses, or set-offs that you may have against [Seamless]." Wood Aff. Ex. 9 & 10. Plaintiff argues that the allegations in the Texas Action will not impact the instant action because this provision bars Defendant from defending the instant action

12.

The Supreme Court has recognized the importance of judicial economy in the transfer analysis:

> To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent. Moreover, such a situation is conducive to a race of diligence among litigants for a trial in the District Court each prefers.

*Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). Accordingly, courts frequently transfer cases "to a forum in which other actions that arose from the same transaction or event as that at issue in the transferor court or were related to them in some fashion were pending[.]" 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3854, p. 252 (3d ed. 2007); *see also Farm Boy Co-Op & Feed Co.*, 2010 WL 935747, at *3 ("Courts have thus granted transfers to districts where related actions are already pending to permit cases to be consolidated into one proceeding."). "However, courts have denied motions to transfer . . . where the two cases at issue: (i) do not involve the same facts, transactions, or occurrences; (ii) do not involve the same parties; or (3) do not possess complete identity of legal issues." *NBA Props., Inc. v. Salvino, Inc.*, No. 99 Civ. 11799 AGS, 2000 WL 323257 (S.D.N.Y. Mar. 27, 2000) (internal citations and quotation marks omitted).

In the Texas Action, Defendant has asserted claims against approximately twenty defendants for civil RICO violations, theft, fraud and misrepresentation, fraud by nondisclosure, civil conspiracy, breach of fiduciary duty, conversion, misappropriation and

---

on the basis of any fraud by Seamless. Defendant counters that this provision may not bar its fraud defense because Defendant may not have "accepted" the copiers and Plaintiff may not have taken the assignment from Seamless in good faith. Reply at 2-4. The court need not resolve these issues at this time and the court finds that they do not warrant a transfer of venue.

recovery of voidable transfers. *See* Texas Action Amended Complaint at ¶¶ 59-97. Among numerous other remedies, Defendant seeks to recover "an amount far in excess of $15,000,000.00." *Id.* Defendant summarizes the alleged "criminal and fraudulent schemes" in the Texas Action as follows:

> 35. . . . [T]he Defendants had Moreno [and three of Moreno's relatives] use their positions in [Defendant's] accounting department . . . to create fictitious vendor accounts in [Defendant's] accounting program using names similar to approved vendor names already in the accounting system. The Defendants would file for assumed names similar to the approved vendor names and then open banks accounts using those names. The Defendants would then submit real invoices under the similar vendor names in order to obtain signatures on checks. The Defendants would also forge the signature of [Defendant's] officer to pay for invoices that had no supporting documentation. [Moreno and her relatives/co-workers] would then use the fictitious invoices and encode these invoices onto the accounting system under approved vendor codes. Checks would then be issued to assumed names and corporations utilizing names similar to the approved vendor and then given to the Defendants to deposit in the Defendants' bank accounts.

Texas Action Amended Complaint at ¶ 35.

The court finds that transfer to the Southern District of Texas is not warranted on the basis of the Texas Action. Plaintiff is not a party to the Texas Action. Defendant does not allege that Plaintiff was involved in, or even aware of, the alleged conduct by Moreno, Seamless or any other defendant in the Texas Action. In fact, a review of Defendant's Amended Complaint in the Texas Action does not reveal any mention of Plaintiff. Defendant maintains that it intends to defend against Plaintiff's claims by "presenting evidence that the [Agreements] are unenforceable because they were the result of fraud." Def. Brief at 7. However, the only allegation in the Texas Action arguably related to Plaintiff or the instant action is Defendant's claim that one of the fifteen copy machines subject to the Agreements was delivered to Moreno's son's business, while Defendant was

left footing the bill. As Plaintiff notes, Defendant "fails to explain how these alleged acts as to one copier affect the Agreements covering the other 14 copiers[.]" Resistance at 10. As the party asserting the Texas Action as a reason for transfer, it is incumbent upon Defendant to provide the court "with detailed information about the cases that supposedly are related." 15 Wright, Miller & Cooper, *Federal Practice and Procedure*, §3854, p. 271 (3d ed. 2007).

The instant action may share some factual overlap with the Texas Action, but only insofar as the Texas Action is based in part upon alleged fraud relating to one of the copy machines. The court finds this insufficient to warrant transfer. Plaintiff is not a party to the Texas Action and any factual overlap is quite insignificant when considering the breadth of the parties, claims and recovery sought in the Texas Action. In other words, a substantial majority of the parties and claims in the Texas Action have nothing at all to do with Plaintiff.

### 4. *Forum-selection clauses*

Although Defendant apparently takes issue with the fact that Moreno executed the Agreements on its behalf, it does not question the validity of the forum selection clauses.[9]

---

[9] Plaintiff aptly describes Defendant's position on this issue as "difficult to follow." Resistance at 12, n. 6. Specifically, it is unclear whether Defendant considers the Agreements as valid and binding. Defendant's vice president, Kelley, avers that Moreno "purportedly executed" the Agreements on Defendant's behalf despite the fact that she apparently lacked authority to do so. Kelley Aff. ¶¶ 8-9. Defendant also indicates that it will defend against Plaintiff's claims by arguing that the Agreements "are unenforceable because they were the result of fraud." Def. Brief at 7. However, Defendant elsewhere appears to accept that it is bound by the Agreements. *See* Def. Brief at 1 ("On or about June 20, 2008, [Defendant] *agreed with* Seamless Solutions, Inc. to consolidate a number of 'C/Camp Agreements' into two agreements to purchase photocopies produced on-site by photocopy equipment.") (emphasis added). Defendant also agrees that Seamless "assigned its rights under the [Agreements] to [Plaintiff]." *Id*. at 2. Defendant goes so far as to state that it "*accepted* the C/Camp offer in part because no equipment would be leased." *Id*. at 2 (emphasis added). It is unclear how Defendant would have such

19

Rather, Defendant argues that the forum selection clauses are permissive, rather than mandatory. As such, Defendant argues the clauses are of "limited significance" to the transfer analysis. Def. Brief at 8.

Plaintiff agrees that the forum selection clauses are permissive and that "such a clause does not prevent a court from transferring a case[.]" Resistance at 6, n. 3. However, Plaintiff argues that Defendant's suggestion that the clauses are of "limited significance" is "incorrect, and should be disregarded." *Id.*

The Eighth Circuit Court of Appeals has recognized that "a valid and applicable forum selection clause in a contract is 'a significant factor that figures centrally in the district court's calculus.'" *Terra Int'l, Inc.*, 119 F.3d at 691 (quoting *Stewart Org., Inc.*, 487 U.S. at 29). Although the presence of an applicable forum selection clause is only "one factor" in the transfer analysis, it is "a very important one." *Id.* at 695; *see id.* at 697 (acknowledging that court was "quite skeptical" of district court's balance of convenience analysis but concluding that "we cannot say that [the convenience factors] so overwhelmingly favor Iowa as to outweigh the significance of the agreed-upon forum selection clause"). The court finds that the presence of the Iowa forum selection clauses weighs strongly against transfer.

### C. Summary

Several important considerations weigh against a transfer of venue in the instant action. First, the court must give "considerable deference" to Plaintiff's choice of forum. *Terra Int'l*, 119 F.3d at 695. Even if less deference is owed because some of the underlying facts occurred in Texas, the court finds that this factor weighs against transfer because Plaintiff resides in its chosen forum and some underlying facts occurred in this

---

knowledge if Moreno executed the Agreements in secret and without authority. If Defendant intends to claim that the Agreements were the product of fraud, it is somewhat surprising that it does not question the validity of the forum selection clauses or ever directly argue that it is not bound by the Agreements as a whole.

forum.  Second, the presence of an applicable forum selection clause is a "significant" and "very important" factor in the transfer analysis.  *Id.* at 695-97.

Other factors, such as the convenience of parties and witnesses are largely neutral. As previously noted, Defendant's execution of the forum selection clauses largely precludes it from asserting its own inconvenience as a reason to transfer venue.  Defendant largely failed to identify any relevant witnesses or explain how they would be inconvenienced if the instant action is not transferred.  Plaintiff identified numerous potential witnesses that reside in this forum and were involved in the transactions at issue. The presence of documentary evidence in Texas is entitled to little weight and, in any event, much of the relevant documentary evidence appears to be in Iowa.

The only consideration that arguably supports a transfer of venue is the pendency of the Texas Action.  However, because Plaintiff is not a party to the Texas Action and any legal and factual overlap between the Texas Action and the instant action appears relatively minor, this consideration does not outweigh those discussed above. Accordingly, the court shall deny the Motion.

## VI.  CONCLUSION

In light of the foregoing, the Motion (docket no. 14) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 30th day of June, 2010.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA